Citation Nr: 1641962 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 14-00 918 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to more than a disability rating of 40 percent for degenerative disc disease, lumbar spine, status post laminectomy and fusion.

2. Entitlement to service connection for a left knee disability, including as secondary to service-connected disabilities.

3. Entitlement to service connection for acid reflux, including as secondary to service connected-disabilities.


REPRESENTATION

Appellant represented by: Michael James Kelley, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Havelka, Counsel


INTRODUCTION

The Veteran served on active duty from July 1985 to June 1991. 

This appeal comes before the Board of Veterans' Appeals (Board) from June 2012, June 2013, and December 2013 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island.

The Veteran provided testimony at a videoconference hearing before the undersigned in July 2015. A transcript of the hearing is of record.

When this case was previously before the Board in February 2016, it was dismissed in part, decided in part and remanded in part. 


FINDINGS OF FACT

1. Throughout the period of the claim, the Veteran's lower back disability has been manifested by limitation of motion; neither unfavorable ankylosis of the entire thoracolumbar spine nor incapacitating episodes of intervertebral disc disease totalling at least 6 weeks duration during any relevant 12 month period have been present.

2. The Veteran's lumbar spine degenerative disc disease has resulted in neurological impairment in the right lower extremity that most nearly approximates moderate incomplete paralysis of the sciatic nerve; it has not resulted in neurological impairment involving the left lower extremity.

3. The Veteran's current left knee was not present until more than one year following his separation from service, is not etiologically related to his active service and was not caused or permanently worsened by service-connected disability.

4. The Veteran's current acid reflux was not present until more than one year following his separation from service, is not etiologically related to his active service and was not caused or permanently worsened by service-connected disability.


CONCLUSIONS OF LAW

1. Degenerative disc disease of the lumbar spine, status post laminectomy and fusion, warrants a rating of 40 percent, but not higher, for impairment of the lumbar spine and a separate rating of 20 percent, but not higher, for neurological impairment of the right lower extremity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Codes 5241, 5243; §§ 4.124, 4.124a, Diagnostic Codes 8520, 8720 (2016).

2. A left knee disability is not proximately due to or aggravated by the Veteran's service-connected disabilities, was not incurred in or aggravated by active service, and its incurrence or aggravation during such service may not be presumed. 38 U.S.C.A. §§ 1101, 1110, 1131, 1112, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

4. Acid reflux is not proximately due to or aggravated by the Veteran's service-connected disabilities, and was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1101, 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2016), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. 

The record reflects that the duty to assist has been satisfied. The service records, VA treatment and examination records, Social Security records, and post-service medical evidence identified by the Veteran have been obtained. The Veteran has not identified any outstanding, existing evidence that could be obtained to substantiate the claims; the Board is also unaware of any such evidence. 

The Veteran was afforded VA examinations, with respect to his claim for an increased rating for his service-connected degenerative disc disease of the lumbar spine in 2011 and 2013; these examination reports contain probative evidence as to the level of disability caused by this service-connected condition at the time they were conducted. 

In February 2016, the Board remanded the case for retrieval of Social Security records which has been accomplished. The remand also ordered examinations for the Veteran's increased rating claim for his degenerative disc disease of the lumbar spine and his claims of service connection for acid reflux and a left knee disability. The Veteran failed to report to the scheduled examinations. Notification information from the VA medical center (VAMC) informing the RO of the Veteran's failure to report indicates the Veteran's current address was used for notification. The RO retrieved the Social Security records and scheduled the Veteran for the ordered Compensation and Pension examinations; he has failed to report for the scheduled examinations. He has not alleged that he did not receive notice of the examinations and has not indicated that he would be willing to report for the examinations if they were to be rescheduled. The Board is satisfied that there has been substantial compliance with the Board's February 2016 remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Moreover, due to the Veteran's failure to cooperate in the development of the claims, the Board will decide the appeal without the examination reports that could have been supportive of his claims.

Accordingly, the Board will address the merits of the appellant's appeal.

II. Burden of Proof

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2016); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54 .

III. Increased Disability Rating 

Legal Criteria

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2016). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321 (a), 4.1 (2016). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. 

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14 (2016). 38 C.F.R. § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran's degenerative disc disease of the lumbar spine is rated at under the general rating formula for rating diseases and injuries of the spine. 38 C.F.R. § 4.71a, Diagnostic Codes 5241, 5243 (2016). Intervertebral disc syndrome (IVDS) is evaluated under the general formula for rating diseases and injuries of the spine or under the formula for rating IVDS based on incapacitating episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2016). 

Under the general rating formula for rating diseases and injuries of the spine, with or without symptoms such as pain (whether or not it radiates), stiffness or aching in the area of the spine affected by residuals of injury or disease, the following ratings apply. 

A 40 percent disability rating is warranted for disability of the thoracolumbar spine if forward flexion of the thoracolumbar spine is limited to 30 degrees or less or if there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent rating is warranted if there is unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, Diagnostic Code 5243, General Rating Formula for Diseases and Injuries of the Spine (2016). 

In determining the degree of limitation of motion, the provisions of 38 C.F.R. § 4.40 (2016) concerning lack of normal endurance, functional loss due to pain, and pain on use and during flare-ups; the provisions of 38 C.F.R. § 4.45 (2016) concerning weakened movement, excess fatigability, and incoordination; and the provisions of 38 C.F.R. § 4.10 concerning the effects of the disability on the veteran's ordinary activity are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

There are several notes set out after the diagnostic criteria, which provide the following: First, associated objective neurologic abnormalities are to be rated separately under an appropriate diagnostic code. 

Second, for purposes of VA compensation, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is to 240 degrees. 

Third, in exceptional cases, an examiner may state that, because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in the regulation. 

Fourth, each range of motion should be rounded to the nearest 5 degrees. 

Fifth, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 

Sixth, disabilities of the thoracolumbar and cervical spine segments shall be separately evaluated, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, General Rating Formula for Diseases and Injuries of the Spine, Notes 1-6 (2016). 

Under the rating criteria, intervertebral disc syndrome (IVDS) is evaluated under the general formula for rating diseases and injuries of the spine or under the formula for rating IVDS based on incapacitating episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 38 C.F.R. § 4.71a , Diagnostic Code 5243. With incapacitating episodes having a total duration of at least 6 weeks during the past 12 months a 60 percent rating is warranted. With incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months a 40 percent rating is warranted. A 20 percent disability rating is warranted for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 10 percent rating is warranted for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (2016).

For purposes of evaluations under diagnostic code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 1 (2016).

If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever method results in a higher evaluation for that segment. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 2 (2016).

Associated objective neurologic abnormalities are to be rated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Diagnostic Code 5243, General Rating Formula for Diseases and Injuries of the Spine, Note 1 (2016). 

Neuritis is characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain which at times can be excruciating and is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis. The maximum rating which may be assigned for neuritis not characterized by the organic changes referred to above is that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. 38 C.F.R. § 4.123 (2016). 

Neuralgia is characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. 38 C.F.R. § 4.124 (2016).

Paralysis of the sciatic nerve is rated under Diagnostic Code 8520. Mild incomplete paralysis warrants a 10 percent rating. Moderate incomplete paralysis warrants a 20 percent rating. Moderately severe incomplete paralysis warrants a 40 percent rating. Severe incomplete paralysis, with marked muscular atrophy, warrants a 60 percent rating. Complete sciatic nerve paralysis warrants the assignment of an 80 percent rating and contemplates that the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or very rarely lost. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2016). 

The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a).

Complete paralysis of the sciatic nerve warrants an 80 percent evaluation; with complete paralysis of the sciatic nerve, the foot dangles and drops, no active movement of the muscles below the knee is possible, and flexion of the knee is weakened or (very rarely) lost. Incomplete paralysis of the sciatic nerve warrants a 60 percent evaluation if it is severe with marked muscular dystrophy, a 40 percent evaluation if it is moderately severe, a 20 percent evaluation if it is moderate or a 10 percent evaluation if it is mild. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2004).

Analysis

In accordance with 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42 (2016) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disability. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to this disability. 

The Veteran's service-connected degenerative disc disease, lumbar spine, status post laminectomy and fusion, is assigned a 40 percent disability rating. Review of VA treatment records reveals that the Veteran's back surgery is noted in the medical history. He has complaints of back pain, but active treatment, other than the prescription of pain medication, is not shown. 

In July 2011 a VA examination of the Veteran was conducted. Examination of the lumbar spine revealed no evidence of spasm, guarding, or tenderness. There was no evidence of ankylosis. Reflexes and sensation were intact and range of motion testing revealed forward flexion to 85 degrees and extension to 30 degrees. No neurologic symptom of the lower extremities was reported or noted. 

In November 2013, another VA spine examination was conducted. The Veteran reported complaints of back pain with less flexibility and sciatica down the right leg. He reported increased pain with prolonged standing, bending, lifting and carrying. Physical examination disclosed tenderness to deep palpation. Reflexes and sensation were decreased in the right lower extremity. Range of motion testing was conducted with results after repetitive use testing being worse and were: flexion to forward flexion to 35 degrees and extension to 0 degrees. Range of motion was limited by pain, weakness, fatigability, and lack of endurance. No ankylosis of the spine was present. The examiner indicated that the Veteran experienced incapacitating episodes of intervertebral disc disease totalling 1 week duration during the past 12 months. The examiner also diagnosed right lower extremity radiculopathy. 

At the July 2015 hearing before the Board, the Veteran reported having radicular symptoms in both lower extremities and suggested that he experienced foot drop. Because of this, the Board remanded the case so that an additional examination could be conducted. As noted above, the Veteran did not report to the scheduled examination. This examination may have provided additional evidence favorable to the claim for an increased rating, but the Board cannot compel the Veteran to report for the examination and must therefore rate the Veteran's disability on the available evidence. 

In sum, the record does not contain evidence showing that the Veteran has unfavorable ankylosis of the entire thoracolumbar spine or incapacitating episodes of intervertebral disc disease totalling at least 6 weeks duration during any relevant 12-month period have not been present. There is simply no basis under the schedular criteria for a rating in excess of 40 percent for the Veteran's lumbar spine disability. 

With respect to whether a separate rating is warranted for associated neurological impairment, the Board notes that the July 2011 VA examination did not show any evidence of such impairment. VA treatment records are also silent for diagnosis or objective evidence of neurologic abnormalities related to the Veteran's lumbar degenerative disc disease. 

On the November 2013 VA examination, the examiner indicated that the Veteran had signs and symptoms of radicular pain involving the right lower extremity manifested by: mild constant pain; moderate intermittent usually dull pain; moderate paresthesias or dysesthesias; and moderate numbness. Slightly hypoactive reflexes of the right knee and ankle were noted. The examiner indicated that only the right sciatic nerve was involved. No muscle atrophy was indicated on the examination. The severity of radiculopathy was indicated to be moderate. 

The evidence of record supports the assignment of a separate 20 percent disability rating for the Veteran's radiculopathy of the right lower extremity resulting from degenerative disc disease of the lumbar spine. The evidence shows that he has neurologic abnormalities of the right lower extremity resulting in pain, paresthesias, dysthesias, and numbness which represents neuralgia and which approximates moderate incomplete paralysis of the sciatic nerve warranting the assignment of a separate disability rating. 38 C.F.R. § 4.124a, Diagnostic Codes 8520, 8720 (2016). The preponderance of the evidence is against the assignment of a rating in excess of 20 percent. The examining physician on the 2013 VA examination indicated that the Veteran's right sciatic radiculopathy was moderate in severity. There is no evidence of muscle atrophy or objective evidence of the presence of other symptoms warranting the assignment of a disability rating in excess of 20 percent. Although the Veteran described radicular symptoms in both lower extremities at the 2015 hearing, the medical findings of record do not support the presence of more than moderate incomplete paralysis of the right sciatic nerve or the presence of any radiculopathy involving the left lower extremity. The Board has found the objective medical evidence to be more probative than the Veteran's assertions. As discussed above, the Veteran was afforded the opportunity to undergo a VA examination to substantiate his assertions but he failed to do so.

Additional Considerations

Consideration has been given to assigning a staged rating for the disability decided herein; however, at no time during the period in question has a disability rating in excess of 40 percent for functional impairment of the spine or a disability rating in excess of 20 percent for neurological impairment of the right lower extremity been warranted. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Board has considered whether the case should be referred to the Director of the Compensation Service for extra-schedular consideration. In determining whether a case should be referred for extra-schedular consideration, the Board must compare the level of severity and the symptomatology of the claimant's disabilities with the established criteria provided in the rating schedule for each disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

In this case, the manifestations of the service-connected disability at issue, as discussed above, are contemplated by the schedular criteria. There is no contention by the Veteran or indication in the record that the average industrial impairment from the disability would be in excess of that contemplated by the assigned ratings, to include the separate rating granted herein. The Board has therefore determined that referral of this case for extra-schedular consideration under 38 C.F.R. § 3.321 (b) is not in order. 

The Board has also considered the doctrine of reasonable doubt but has determined that the preponderance of the evidence is against the assignment of a rating in excess of 40 percent for the lower back disability, a rating in excess of 20 percent for radiculopathy involving the right lower extremity or a separate compensable rating for radiculopathy involving the left lower extremity so the doctrine is not applicable to these matters. 

IV. Service Connection

Legal Criteria

Service connection is granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d). 

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests arthritis to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as opposed to merely isolated findings or a diagnosis including the word "chronic." When the fact of chronicity in service (or during any applicable presumptive period) is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b). The term "chronic disease" refers to those diseases, such as arthritis, listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101 (3); 38 C.F.R. § 3.309 (a); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Where a chronic disease under 3.309(a) is "shown as such in service" ("meaning clearly diagnosed beyond legitimate question," Walker, 708 F.3d at 1339), or in the presumptive period so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303 (b).

A disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a) 

Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected. However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. 38 C.F.R. § 3.310(b). 

Factual Background and Analysis

The Veteran claims entitlement to service connection for a left knee disability and acid reflux. Review of his service treatment records does not reveal any diagnosis of either disorder during service. Moreover, there is no evidence of either claimed disability until years after service, and the Veteran has not alleged that either disability was present within one year after his discharge from service.

Review of the Veteran's current VA treatment records reveals diagnoses of left knee arthritis and gastroesophageal reflux disease (GERD). The diagnosis of GERD is indicated on multiple VA treatment problem lists. An August 2015 VA radiology report indicates mild degenerative changes of the left knee were found on X-ray examination. However a December 2015 orthopedic surgery note indicates that X-ray findings for the Veteran's left knee were within normal limits for his age, that his complaints of left knee pain had resolved, and that his gait was normal. 

At the 2015 hearing the Veteran specified that his claims for service connection were on a secondary basis. He claimed that prescribed pain medication for his service-connected right knee and lumbar spine disabilities has caused him acid reflux. He also claimed that an abnormal gait resulting from his service-connected right knee and lower back disabilities was the cause his left knee disability. 

The Board has reviewed all of the evidence of record. There is no medical opinion or other probative evidence which links the Veteran's current acid reflux or left knee disability to service-connected disability. The Board remanded the claims to afford the Veteran VA examinations to determine the etiology of the claimed disabilities but the Veteran declined to undergo the examinations. Accordingly, the Board must deny the claims because of the absence of probative evidence linking either disability to service or service-connected disability.

The Board recognizes that the Veteran might sincerely believe that his acid reflux and left knee arthritis are related to his service-connected disabilities. In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on his symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge); see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Although the Veteran is competent to report his symptoms, he does not possess the medical expertise required to provide a competent opinion concerning the etiology of the disabilities at issue. Accordingly, the claims for service connection for acid reflux and a left knee disability must be denied. 

The Board has duly considered the benefit of the doubt doctrine. However, for the reasons explained above, the Board has determined that the preponderance of the evidence is against the Veteran's claims, so that doctrine is not applicable to these claims.


ORDER

The Board having determined that degenerative disc disease of the lumbar spine, status post laminectomy and fusion, warrants a 40 percent rating, but not higher, for functional impairment of the spine and a separate rating of 20 percent, but not higher, for radiculopathy involving the right lower extremity, the benefit sought on appeal is granted to this extent and subject to the criteria applicable to the payment of monetary benefits. 

Service connection for a left knee disability, including as secondary to service-connected disabilities, is denied.

Service connection for acid reflux, including as secondary to service connected-disabilities, is denied.



____________________________________________
Shane A. Durkin 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs